1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT B. BLUM,

11             Plaintiff,                    No. CIV S-06-2607 EFB

12       vs.

13   MICHAEL J. ASTRUE,                      ORDER
     Commissioner of Social Security,[1]
14
               Defendant.
15   _____/

16       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

17   ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB")

18   under Title II of the Social Security Act ("Act") for a closed period of time.  For the reasons that

19   follow, plaintiff's motion for summary judgment is denied, and the Commissioner's cross-

20   motion for summary judgment is granted.  The Clerk is directed to enter judgment for the

21   Commissioner.

22   ////

23   ////

24   _____

25       [1]  On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social
     Security, replacing Jo Anne B. Barnhart, the original defendant herein.  Pursuant to 42 U.S.C.
26   § 405(g) and Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in this
     action.

1    **I. BACKGROUND**

2        This case is before the undersigned after a previous remand by the district court on

3    September 27, 2005.  At issue is whether plaintiff had the ability to perform work other than his

4    past relevant work during a closed period – from the alleged onset of disability, July 15, 1997, to

5    June 1, 1999, when he returned to work.  Administrative Transcript ("AT") 109, 112, 444.

6        Plaintiff, born October 22, 1950, filed his initial application for benefits on September 1,

7    1998, alleging disability due to severe bilateral shoulder injuries.  AT 422, 90.  His claim was

8    denied by the administrative law judge ("ALJ") on July 12, 1999.  AT 42-46.  On September 19,

9    2001, the Appeals Council remanded the case back to the ALJ to evaluate the treating and

10   examining source opinions, discuss plaintiff's alleged difficulty in reaching and lifting above the

11   shoulder, and evaluate plaintiff's residual functional capacity.  AT 73-75.  A hearing was held on

12   July 9, 2002, at which the newly assigned ALJ heard plaintiff's testimony and that of a

13   vocational expert.  AT 417-39.  In a decision dated December 24, 2002, the ALJ determined that

14   plaintiff was not disabled.[2]  AT 24-31.

15

16        [2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the
     Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income is paid to
17   disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Both provisions define disability,
     in part, as an "inability to engage in any substantial gainful activity" due to "a medically
18   determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) and
     1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under
19   both programs.  *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v.
     Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

20

21            Step one:  Is the claimant engaging in substantial gainful
         activity?  If so, the claimant is found not disabled.  If not, proceed
         to step two.
22            Step two:  Does the claimant have a "severe" impairment?
         If so, proceed to step three.  If not, then a finding of not disabled is
23       appropriate.
              Step three:  Does the claimant's impairment or combination
24       of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
         404, Subpt. P, App.1?  If so, the claimant is automatically
25       determined disabled.  If not, proceed to step four.
              Step four:  Is the claimant capable of performing his past
26       work?  If so, the claimant is not disabled.  If not, proceed to step

1    On September 27, 2005, the district court remanded the case to the ALJ with an order to

2  reevaluate plaintiff's testimony from 1999 concerning his alleged impairments during the

3  relevant period.  The court found that the ALJ erred in assessing plaintiff's residual functional

4  capacity ("RFC"), and held that the opinions of two state agency physicians were "to be accepted

5  as establishing plaintiff was limited to sedentary work with the nonexertional impairments found

6  by [those] physicians."  AT 477.  The court further directed the ALJ to take the testimony of a

7  vocational expert in light of plaintiff's limitation in reaching overhead on a repetitive, sustained

8  basis.  AT 480-81.

9    On remand, the ALJ again found that plaintiff was not disabled based on his ability to

10  perform other jobs.  Specifically, the ALJ relied on the vocational expert's testimony that

11  considering plaintiff's age, education, work experience and RFC, plaintiff could perform the job

12  of charge account clerk, which existed in significant numbers in the national economy.  AT 449.

13  **II.  ISSUES PRESENTED**

14    Plaintiff presents two primary arguments challenging the ALJ's decision.  First, plaintiff

15  alleges that the ALJ erred at step five of the sequential analysis by failing to pose a complete

16  hypothetical to the vocational expert which accurately reflected all of plaintiff's nonexertional

17  limitations.  Further, plaintiff argues that the ALJ failed to resolve conflicts between the expert's

18  testimony and the description of the charge account clerk job listed in the Dictionary of

19  Occupational Titles.  Second, plaintiff asserts that the ALJ improperly assessed plaintiff's

20  subjective complaints of pain.

21  _____

      five.
22        Step five:  Does the claimant have the residual functional
      capacity to perform any other work?  If so, the claimant is not
23      disabled.  If not, the claimant is disabled.

24  *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25    The claimant bears the burden of proof in the first four steps of the sequential evaluation
      process.  *Bowen*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
26  evaluation process proceeds to step five.  *Id.*

3

1   **III.  LEGAL STANDARDS**

2       The Commissioner's decision that a claimant is not disabled will be upheld if the findings

3   of fact are supported by substantial evidence in the record and the proper legal standards were

4   applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

5   *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

6   180 F.3d 1094, 1097 (9th Cir.1999).

7       The findings of the Commissioner as to any fact, if supported by substantial evidence,

8   are conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

9   more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521

10  (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to

11  support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol.*

12  *Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

13      "The ALJ is responsible for determining credibility, resolving conflicts in medical

14  testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

15  2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

16  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

17  *Thomas v. Barnhart*, 278  F.3d 947, 954 (9th Cir. 2002).

18  **IV.  ANALYSIS**

19      **A.  Step Five Findings**

20      Plaintiff argues that the ALJ erred in finding that plaintiff could perform sedentary work

21  as a charge account clerk, where the vocational expert's response to a hypothetical did not

22  include all of plaintiff's limitations as established by the state agency medical consultants.

23  /////

24  /////

25  /////

26  /////

1    Per the district court's remand order, the ALJ adopted the state agency physicians'

2    assessments of plaintiff's limitations in determining his RFC.  AT 150-56, 291-96.  Specifically,

3    the ALJ found that plaintiff had the

> residual functional capacity to perform the physical exertional and
> nonexertional requirements of work, except:  he could lift and
> carry up to ten pounds occasionally; he could frequently lift and
> carry less than ten pounds; he could stand/walk at least two hours
> in an eight-hour workday; he could sit about six hours in an eight-
> hour workday; he could climb, balance, stoop, kneel, crouch and
> crawl occasionally; he could not perform overhead reaching on a
> repetitive/sustained basis bilaterally; he had to avoid all hazards
> such as heights and machinery; he had to avoid concentrated
> exposure to extreme cold, extreme heat, wetness, humidity, noise
> and vibration; he had to avoid concentrated exposure to fumes,
> odors, dusts, gases, and poor ventilation.

AT 448.

12    Contrary to plaintiff's assertion, this finding is a precise reflection of the assessments by

13    state agency physicians, and was properly reflected in the ALJ's hypothetical to the vocational

14    expert.  AT 152, 294, 509.  Plaintiff argues that both physicians checked a box on their

15    assessment forms indicating that plaintiff had limitations "reaching in all directions (including

16    overhead)."  AT 152, 294.  What plaintiff fails to appreciate is that this "checked box" is

17    qualified by the physicians' comments that plaintiff's limitation was in "reaching over shoulder

18    level on a repetitive sustained basis."  *Id.*  At the 2006 hearing, plaintiff's own attorney

19    confirmed that this was the appropriate interpretation of these notes.  AT 512.

20    The record supports this interpretation.  During the relevant period, plaintiff reported

21    difficulty in reaching overhead or reaching while bearing weights, but did not report limitations

22    in reaching in general.  *See, e.g.,* AT 116, 302, 305, 306, 412-14.  Further, he reported that his

23    daily living activities were unaffected by his impairment, and that he was only precluded from

24    heavy lifting and certain sporting activities.  *See, e.g.,* AT 116, 301, 408.  There is no evidence

25    that plaintiff had any other limitations in his ability to reach.

26    ////

1        Furthermore, because the record establishes that plaintiff's only "reaching" limitation

2    was in reaching overhead on a "repetitive/sustained basis," plaintiff's assertion that he could not

3    perform the charge account clerk job is unavailing.  More precisely, plaintiff fails to establish

4    that there was a "conflict" between the vocational expert's testimony concerning that job and its

5    description in the Dictionary of Occupational Titles ("DOT").

6        The vocational expert testified that based on plaintiff's age, education, work experience

7    and RFC, plaintiff could perform the job of charge account clerk, which existed in significant

8    numbers in the national economy.  AT 449.  Plaintiff argues that this testimony conflicts with the

9    DOT's description of the job, which states that it requires frequent reaching.  *See* United States

10   Dept. of Labor, Employment and Training Admin., *Dictionary of Occupational Titles* (4th ed.

11   1991), ("DOT"), 205.367-014 (charge account clerk).

12       The DOT definition is fully consistent with the expert's testimony at the hearing.  If there

13   is any issue at all, it is one of ambiguity, and not of conflict, with regard to the DOT's

14   description of  "frequent reaching."  Any such ambiguity was resolved at the hearing when

15   plaintiff's attorney asked the expert whether plaintiff could perform this job if he was restricted

16   from reaching in all directions, and the expert answered "no."  AT 511.  A colloquy then

17   followed, in which the ALJ and the attorney discussed the record evidence, and it was conceded

18   that plaintiff was not limited to reaching in all directions but only to overhead reaching.  AT 511-

19   12.  When asked whether plaintiff could perform the job with that restriction, the expert replied

20   that he could.  AT 511-12.

21       Even though plaintiff argues that, pursuant to *Massachi v. Astrue*, 486 F.3d 1149, 1152

22   (9th Cir. 2007) and Social Security Ruling 00-4p, the ALJ was required to ask the vocational

23   expert whether his testimony conflicted with the DOT, the failure to do so in this case was

24   harmless.  Here, due to the colloquy between the ALJ, plaintiff's counsel and the expert, it was

25   made clear that plaintiff's limitation was in reaching overhead, not reaching in all directions, and

26   that even with the overhead limitation, plaintiff could perform the job of charge account clerk.

1   AT 511-12.  After that colloquy, there was no doubt that the job of charge account clerk could be

2   performed by a person with plaintiff's limitation in reaching overhead on a sustained basis.

3   Accordingly, there was no conflict between the testimony and the DOT, and any ambiguity was

4   resolved during the hearing.  *See Massachi*, 486 F.3d at 1154, n.19 (noting that failure to ask

5   about a conflict is harmless where there is no conflict, or where the vocational expert provided

6   sufficient support for his conclusion so as to justify any potential conflicts).

7          Finally, plaintiff argues that the vocational expert's testimony failed to account for

8   plaintiff's restriction from concentrated exposure to noise.

9          First, this court notes that the ALJ adopted this "noise" limitation believing she was

10  required to pursuant to the district court's remand order.  That order provided that the state

11  agency physicians' assessments established plaintiff's limitations during the closed period.   AT

12  477.  The ALJ noted this provision, but also noted that the physicians never explained why

13  plaintiff's shoulder impairment necessitated avoidance of concentrated exposure to dust, fumes,

14  noise, and the like.  AT 448.  Indeed, there is absolutely no evidence in the record supporting

15  these limitations.  Based on this fact, and upon a global reading of the district court's prior order,

16  it is clear that the court was concerned only with plaintiff's limited ability to reach overhead and

17  not his purported limitations from concentrated exposure to dust, fumes, noise, etc.  The

18  previously assigned magistrate judge found the state agency opinions persuasive insofar as they

19  expressed limitations based on plaintiff's severe shoulder impairment, and directed the ALJ to

20  explore those restrictions on remand through vocational expert testimony.  AT 480-81.

21         Furthermore, while plaintiff points to the DOT's indication that the charge account clerk

22  job involves exposure to moderate (level 3) noise, the court notes that in plaintiff's previous and

23  current job as a truck driver, he is exposed to loud (level 4) noise.  *Compare* DOT, 905.663.014

24  (truck driver, heavy) (exposure to noise in truck driving is "level 4 – loud") *with* DOT, 205.367-

25  014 (exposure to "level 3 – moderate" noise in charge account clerk job).

26  ////

1    Based on the foregoing, the court finds there was no error in the ALJ's failure to probe

2 the issue of whether the job of charge account clerk impermissibly exposed plaintiff to too much

3 noise.  Further, there was no conflict between the expert's testimony and the DOT's description

4 of the charge account clerk job, and any failure to inquire about a possible conflict was harmless.

5    **B.  Evaluation of Plaintiff's Subjective Complaints**

6    Plaintiff next argues that the ALJ did not properly evaluate plaintiff's subjective

7 complaints of pain with respect to his ability to work during the closed period.  In particular,

8 plaintiff argues that the ALJ failed to first make the threshold finding that plaintiff suffered from

9 a medically determinable impairment that could reasonably be expected to produce pain, and

10 then failed to discuss all the factors set forth in SSR 96-7p for determining whether plaintiff's

11 allegations of pain were credible.  Plaintiff points to no particular evidence that plaintiff's pain

12 affected his ability to do sedentary work with the limitations prescribed by the state agency

13 physicians and adopted by the ALJ.  Rather, plaintiff merely makes general assertions of error

14 with regard to the ALJ's assessment of plaintiff's subjective complaints.

15    In evaluating whether subjective complaints are credible, the ALJ should first consider

16 objective medical evidence and then consider other factors.  *Bunnell v. Sullivan*, 947 F.2d 341,

17 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

18 then may consider the nature of the symptoms alleged, including aggravating factors,

19 medication, treatment and functional restrictions.  *Id.* at 345-47.  The ALJ also may consider: (1)

20 the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

21 testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

22 prescribed course of treatment, and (3) the applicant's daily activities.  *Orn v. Astrue*, 495 F.3d

23 625, 636 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

24    The ALJ determines whether a disability applicant is credible, and the court defers to the

25 ALJ's discretion if the ALJ used the proper process and provided proper reasons.  *See, e.g.,*

26 *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995).  "Without affirmative evidence showing that

8

the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

Here, there was objective medical evidence of plaintiff's shoulder impairments, which were likely to produce pain.  Indeed, contrary to plaintiff's assertion that the ALJ determined plaintiff did not have bilateral shoulder injuries, she ultimately found that "the medical evidence establishes that claimant has severe bilateral shoulder injuries."  AT 450.

 As ordered by the district court, the ALJ considered plaintiff's testimony from the 1999 hearing regarding the relevant period of alleged disability.  AT 478-79.[3]  After considering that testimony, the ALJ made an adverse credibility determination, which she supported by articulating clear and convincing reasons that were supported by the record.  AT 448.

In particular, the ALJ noted plaintiff's failure to follow a prescribed course of treatment. For example, the ALJ noted that plaintiff had not been fully compliant with medication and physical therapy during the closed period.  AT 447, 217-18.  The ALJ also pointed to plaintiff's daily activities which did not evidence a complete inability to perform work-related activities. Specifically, the ALJ noted that plaintiff had undertaken a road trip of several hundred miles, and was able to perform household chores.  AT 447.  Indeed, in a report dated August 23, 1998, plaintiff reported that his daily activities were unrestricted except that he could not do any heavy lifting or sporting activity.  AT 116.  Similarly, he testified on April 14, 1999, that his daily living activities were unaffected and that he had no problems sitting, standing, walking, carrying, squatting, crawling, pushing, or climbing stairs.  AT 408-15.

In assessing plaintiff's credibility, the ALJ also cited plaintiff's attitude of entitlement to benefits, noting his preference for his current job and disinclination to try any other kind of

---

[3]  The district court found that the ALJ had previously, improperly based her credibility determination on plaintiff's testimony from 2002, which only concerned his limitations at that time.  AT 478, 426-34.

work.  The ALJ commented that an "individual is not 'entitled' to Social Security disability payments because he does not want retraining to a less strenuous job that might be less lucrative."  AT 447.

To the extent plaintiff asserts that the ALJ erred by failing to consider plaintiff's alleged inability to stand "in one spot, maybe five or ten minutes" before he "start[ed] getting sore," that argument is unavailing.  AT 507-08.  First, plaintiff's alleged limitation in that regard was brought up for the first time during the 2006 hearing, and appears nowhere else in the record.  In fact, the record is replete with plaintiff's statements that he had no problem standing during the relevant time period.  *See, e.g.,* AT 310, 316, 413.  Indeed, the state agency physicians, whose opinions plaintiff does not contest in any way, found that plaintiff could stand for at least two hours in a workday.  AT 150, 294.  Thus, the ALJ did not err by declining to credit plaintiff's purported standing limitations.

Finally, plaintiff argues that the ALJ erred by not considering statements by the state agency physicians that plaintiff was credible.  AT 154, 296.  To the contrary, the ALJ adopted those very opinions in determining plaintiff's RFC.  Significantly, those physicians who found plaintiff credible also found him capable of performing sedentary work with certain restrictions.  AT 150-56, 291-96.

The ALJ considered plaintiff's testimony from 1999, as ordered, and made an adverse credibility finding which was based on proper standards and supported by the evidence.  More importantly, plaintiff has pointed to no evidence demonstrating that any of plaintiff's subjective complaints, even if credited, would preclude him from doing the job of charge account clerk during the relevant period.  Accordingly, reversal on this basis is inappropriate and the ALJ's credibility determination should not be disturbed.

/////

/////

/////

1 **V.  CONCLUSION**

2    The court finds the ALJ's assessment is supported by substantial evidence in the record

3 and based on the proper legal standards.  Accordingly, plaintiff's motion for summary judgment

4 is DENIED, the Commissioner's cross-motion for summary judgment is GRANTED, and the

5 Clerk is directed to enter judgment for the Commissioner.

6 DATED:  March 3, 2008.

7

8                               EDMUND F. BRENNAN
                               UNITED STATES MAGISTRATE JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26